1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

**IN THE UNITED STATES DISTRICT COURT FOR THE**
**WESTERN DISTRICT OF WASHINGTON**
**AT TACOMA**

| | |
|---|---|
| NHU DINH, individually and on behalf of all others similarly situated,<br><br>              Plaintiff,<br><br>    v.<br><br>UMPQUA BANK,<br><br>              Defendant. | Case No.<br><br>**DEFENDANT UMPQUA BANK'S NOTICE OF REMOVAL**<br><br>Removal from the Superior Court of the State of Washington for the County of Pierce, Case No. 23-2-09568-1 |

TO THE CLERK OF THE UNITED STATES DISTRICT COURT FOR THE WESTERN

DISTRICT OF WASHINGTON, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:

Defendant Umpqua Bank, pursuant to 28 U.S.C. §§ 1332(d) (the Class Action Fairness Act of

2005 or "CAFA"), 1441, and 1446, hereby files this Notice of Removal of this action from the

Superior Court for the State of Washington in and for Pierce County, to the United States District

Court for the Western District of Washington, and in support thereof states as follows:

**I.     STATEMENT OF JURISDICTION**

1.     This Court has jurisdiction over Plaintiff's claims pursuant to CAFA, which

amended 28 U.S.C. § 1332 to provide that a putative class action is removable to federal court if:

(1) the proposed class consists of at least 100 members; (2) the amount in controversy exceeds

$5,000,000, exclusive of interest and costs; and (3) one member of the proposed class is a citizen

of a state different from any defendant. *See* 28 U.S.C. § 1332(d). CAFA authorizes removal of

such actions pursuant to 28 U.S.C. §§ 1441(a) and 1446. As demonstrated below, this action meets



1000 SECOND AVENUE, SUITE 3500
SEATTLE, WA 98104 • (206) 393-5400

all of CAFA's removal requirements and is timely and properly removed by the filing of this Notice.

## II.    PLEADINGS, PROCESS, AND ORDERS

2.    Plaintiff Nhhu Dinh ("Plaintiff") commenced a civil action, styled *Nhu Dinh, individually and on behalf of all other similarly situated v. Umpqua Bank* in the Superior Court for the State of Washington in and for Pierce County, by filing a Class Action Complaint on September 8, 2023, Case No. 23-2-09568-1 (the "State Court Action").

3.    The Summons and a copy of Plaintiff's Complaint were served on Umpqua Bank on October 10, 2023. Copies of the Case Information Cover Sheet, Order Setting Original Case Schedule, Summons, and Return of Service are attached to this Notice as **Exhibit A**. A copy of the Complaint is included with this Notice as **Attachment 1** pursuant to LCR 101(a)(b)(1), and the Civil Cover Sheet is included as **Attachment 2** pursuant to LCR 101(a)(b)(4). Umpqua is informed and believes that the aforementioned documents and exhibits include all of the process, pleadings and orders on file in the State Court Action. *See* 28 U.S.C. § 1446(a).

4.    As set forth in the Complaint, Plaintiff brings claims for negligence, negligence per se, breach of implied contract, breach of fiduciary duty, invasion of privacy, breach of covenant of good faith and fair dealing, unjust enrichment, and injunctive and declaratory relief based on a data incident involving Umpqua Bank's file transfer vendor, discovered in June of 2023 (the "Incident"). (Compl. ¶¶ 4, 125-215.)

5.    In addition to her individual claims, Plaintiff proports to represent a class of "All individuals whose PII may have been accessed and/or acquired in the Data Breach that is the subject of the Notice of Data Breach that Defendant sent to Plaintiff and the Class Members on or around August of 2023." (Compl. ¶ 119.)

6.    By filing this notice of removal, Umpqua Bank does not intend to waive, and hereby

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

reserves, any objections as to venue, the legal sufficiency of claims alleged in the Complaint, and all other defenses. Umpqua Bank reserves the right to supplement and amend this notice of removal.

### III.    JURISDICTION PURSUANT TO CLASS ACTION FAIRNESS ACT

7.    Section 4 of CAFA sets forth the general rule that "[t]he district courts shall have original jurisdiction of any civil action in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and is a class action in which . . . any member of a class of plaintiffs is a citizen of a State different from any defendant." 28 U.S.C. §§ 1332(d)(2); (d)(6) (explaining claims may be aggregated).

8.    Section 4 of CAFA further states that the jurisdictional rule set forth in 28 U.S.C. § 1332(d)(2) applies only to class actions in which the number of members of all proposed plaintiff classes, in the aggregate, is 100 or more.  *See* 28 U.S.C. § 1332(d)(5).

9.    This Court has jurisdiction over this action pursuant to CAFA, 28 U.S.C. § 1332(d), and this action may be removed by Umpqua Bank pursuant to the provisions of 28 U.S.C. § 1441(a), because the proposed plaintiff class consists of at least 100 members, the total amount in controversy exceeds $5,000,000, and there is diversity between at least one proposed class member and the defendant.

10.    Venue lies in the United States District Court for the Western District of Washington, pursuant to 28 U.S.C. § 84(b), 1441, and 1446(a).  This action was originally brought in the Pierce County Superior Court, which is located within the Western District of Washington. Venue is proper with this Court because it is the "district and division embracing the place where such action is pending."  28 U.S.C. § 1441(a).

### A.    The Putative Class Contains At Least 100 Members

11.    Plaintiff brought this action on behalf of herself and all others similarly situated as

a class action pursuant to Washington Superior Court Civil Rule 23, which authorizes an action to be brought by one or more representative persons as a class action. (Compl. ¶ 118.) Plaintiff seeks to represent a purported class of "All individuals whose PII may have been accessed and/or acquired in the Data Breach that is the subject of the Notice of Data Breach that Defendant sent to Plaintiff and the Class Members on or around August of 2023." (Compl. ¶ 119.)

12.    Plaintiff alleges that the Putative Class Members are "so numerous that joinder of all members is impracticable." (*Id.* ¶ 120.)

13.    Plaintiff alleges the putative class consists of "over 429,252 Class Members." (*Id.* ¶¶ 8, 120)

**B.    There Is Diversity of Citizenship Between At Least One Proposed Class Member and Umpqua Bank.**

14.    CAFA's minimal diversity requirement is satisfied when "any member of a class of plaintiffs is a citizen of a State different from any defendant." 28 U.S.C §§ 1332(d)(2)(A); *Armstrong v. Argosy Educ. Grp. Inc.*, No. C14-852 MJP, 2014 WL 12674280, at *2 (W.D. Wash. Aug. 5, 2014) (explaining that "CAFA has no 'complete diversity' or forum defendant rule, but rather a 'minimal diversity' requirement which is satisfied wherever a single member of the proposed class is from a different state than any defendant"). Complete diversity of citizenship exists here because Plaintiff and Umpqua Bank are citizens of different states.

15.    <u>Plaintiff's Citizenship.</u> For diversity purposes, a person is a "citizen" of the state in which her or she is domiciled. *See Kantor v. Wellesley Galleries, Ltd.*, 704 F.2d 1088 (9th Cir. 1983). A person's domicile is the place he or she resides with the intention to remain, or to which he or she intends to return. *See Kanter v. Warner-Lambert Clew & Moss*, 797 F.2d 747, 749-50 (9th Cir. 1986). Plaintiff avers that she is a citizen of Washington. (Compl. ¶ 16.) Accordingly, Plaintiff is a citizen of the State of Washington for purposes of removal. *See, e.g., Mondragon v.*

*Capital One Auto Finance*, 776 F.3d 880, 885-86 (9th Cir. 2013) (holding that, in connection with removal to federal court, a person's continuing domicile in a state establishes citizenship "unless rebutted with sufficient evidence of change").

16.    Defendant's Citizenship.    Under § 1332(d)(10), "an unincorporated association shall be deemed a citizen of the State where it has its principal place of business and the State under whose laws it is organized." *See also Abrego Abrego v. The Dow Chem. Co.*, 443 F.3d 676, 684 (9th Cir. 2006). Defendant is an Oregon state-chartered bank with its principal place of business in Oregon. (Compl. ¶ 17.) Accordingly, Defendant is a citizen of Oregon.[1]

### C.    The Alleged Amount in Controversy Exceeds $5,000,000

17.    Under CAFA, the articulated claims of all class members are aggregated to determine if the amount in controversy exceeds $5,000,000.  *See* 28 U.S.C. § 1332(d)(6). Significantly, Congress intended federal jurisdiction to exist under CAFA "if the value of the matter in litigation exceeds $5,000,000 either from the viewpoint of the plaintiff or the viewpoint of the defendant, and regardless of the type of relief sought (*e.g.,* damages, injunctive relief, or declaratory relief)."  Staff of S. Comm. on the Judiciary, 109th Cong., *Rep. on The Class Action Fairness Act of 2005*, 42 (Comm. Print 2005).  The Senate Judiciary Committee's Report on the final version of CAFA also makes clear that any doubts regarding the maintenance of interstate class actions in state or federal court should be resolved in favor of federal jurisdiction.  *Id.* at 43 ("Overall, new section 1332(d) is intended to expand substantially federal court jurisdiction over class actions.  Its provisions should be read broadly, with a strong preference that interstate class

---

[1] Umpqua Bank reserves the right to present additional evidentiary support should Plaintiff challenge federal jurisdiction. *See Dart Cherokee*, 574 U.S. at 89 (noting that "[e]vidence establishing the amount is required by § 1446(c)(2)(B) only when the plaintiff contests, or the court questions, the defendant's allegation" that the amount in controversy exceeds the jurisdictional threshold).

actions should be heard in a federal court if properly removed by any defendant.").

18.     When a plaintiff fails to plead a specific dollar amount of damages and the amount in controversy is not necessarily "facially apparent" from the complaint, "the court may consider facts in the removal petition" to determine the amount at issue. *Kroske v. U.S. Bank Corp.*, 432 F.3d 976, 980 (9th Cir. 2005). "[A] defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Dart Cherokee Basin Op. Co. v. Owens*, 574 U.S. 81, 89 (2014). To satisfy this burden, a defendant may rely on a "reasonable" "chain of reasoning" that is based on "reasonable" "assumptions." *LaCross v. Knight Transp. Inc.*, 775 F.3d 1200, 1201 (9th Cir. 2015); *see also Salter v. Quality Carriers, Inc.*, 974 F.3d 959, 959 (9th Cir. 2020) ("[I]n Arias we held that a removing defendant's notice of removal need not contain evidentiary submissions but only plausible allegations of jurisdictional elements," quotations and citations omitted). That is because "[t]he amount in controversy is simply an estimate of the total amount in dispute, not a prospective assessment of defendant's liability." *Lewis v. Verizon Commc'ns, Inc.*, 627 F.3d 395, 400 (9th Cir. 2010). "[W]hen a defendant seeks federal-court adjudication, the defendant's amount-in-controversy allegation should be accepted when not contested by the plaintiff or questioned by the court." *Dart Cherokee*, 574 U.S. at 87.

19.     Umpqua Bank denies Plaintiff's allegations of liability, fault, or other wrongdoing and that Plaintiff has suffered any cognizable harm. Umpqua Bank intends to vigorously defend against all of Plaintiff's causes of action.  Nevertheless, without admitting that Plaintiff and/or any member of the putative class can recover any damages, when one considers the number of alleged Putative Class Members and the causes of action cited, the aggregate amount in controversy

presented by this case exceeds $5,000,000.[2]

20.    The Complaint alleges Plaintiff and the class members have suffered injuries including "years of constant surveillance of their financial and personal records, monitoring, and loss of rights." (Compl. ¶¶ 106, 109 ("To date, Defendant has offered Plaintiff and some Class Members twenty-four (24) months of identity monitoring services. The offered services are inadequate to protect Plaintiff and Class members from the threats they face for years to come . . . ."); 14 ("Plaintiff and Class Members have all suffered injury . . . including . . . a lifetime risk of identity theft [and] out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft, tax fraud, and/or unauthorized use of their PII"); 102 (same); 206 (same).) Equifax advertises that its credit monitoring services cost between $59.40 per year for basic plans to $239.40 per year for premium plans. *Compare our Value Products*, EQUIFAX (last visited Oct. 27, 2023), https://www.equifax.com/personal/products/value-product-comparison/ ($4.95 per month for Equifax's Credit Monitor program); *Compare our Premium Products*, EQUIFAX (last visited Oct. 27, 2023), https://www.equifax.com/personal/products/credit/monitoring-product-comparison/ ($19.95 per month for Equifax Complete Premier program). Accordingly, even using the low end of these price ranges, three *months* of credit monitoring, alone, times the pleaded class size (429,525 individuals), would put the amount in controversy at $6,374,392.20 (($4.95 x 3) x 429,525). Courts have found this sufficient to establish the CAFA amount in controversy in similar data incident cases. *Copple v. Arthur J. Gallegher & Co.*, No. C22-0116-LK-SKV, 2022 WL 3357865, at *7 (W.D. Wash. Aug. 2, 2022) (denying motion to remand).[3]

---

[2] Defendant provides these calculations solely to demonstrate that the amount in controversy in this case exceeds the jurisdictional minimum.  Defendant makes no admission of any liability or damages with respect to any aspect of this case.

[3] Further, Plaintiff claims the Data Incident resulted in a "deprivation of the value of their Personal

## III.    TIMELINESS OF REMOVAL

21.    This action has not previously been removed to federal court.

22.    This Notice of Removal is timely pursuant to 28 U.S.C. § 1446(b), which provides that such Notices "shall be filed within thirty days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim upon which such action or proceeding is based." Umpqua Bank has filed this Notice of Removal within 30 days of September 21, 2023, the date on which Plaintiff served Umpqua Bank.

## IV.    NOTICE TO PLAINTIFF

23.    In accordance with 28 U.S.C. § 1446(d), the undersigned counsel certifies that a copy of this Notice of Removal and all supporting papers will be promptly served on Plaintiff's counsel and filed with the Superior Court for the State of Washington in and for the County of Pierce.

**WHEREFORE**, for all of the foregoing reasons, Umpqua Bank hereby removes the State Court Action now pending in the Superior Court for the State of Washington in and for the County of Pierce, to the United States District Court for the Western District of Washington.

//

//

//

//

//

Information." (Compl. ¶¶ 9, 69 (same), 102 (same).) And Plaintiff claims that personal information "can be sold at a price ranging from $40 to $200." (*Id.* ¶ 92.) Applying the low end of Plaintiff's estimated range to the alleged class of over 400,000 individuals, this alleged harm alone would exceed $5,000,000.

1    DATED this 30th day of October, 2023.

2                                           POLSINELLI PC

3                                           By: /s/ Jessica M. Andrade
                                                Jessica M. Andrade, WSBA #39297
4                                               1000 2nd Avenue, Suite 3500
                                                Seattle, WA 98104
5                                               Telephone: (206) 393-5400
                                                Facsimile: (206) 393-5401
6                                               Email: jessica.andrade@polsinelli.com

7
                                                /s/ John C. Cleary
8                                               John C. Cleary (*pro hac vice* forthcoming)
                                                600 Third Avenue, 42nd Floor
9                                               New York, NY 10016
                                                Telephone: (212) 413-2837
10                                              Facsimile: (212) 684-0197
                                                Email: john.cleary@polsinelli.com
11

12                                          *Attorneys for Defendant Umpqua Bank*

13

14

15

16

17

18

19

20

21

22

23

24

25

26

DEFENDANT UMPQUA BANK'S
NOTICE OF REMOVAL- 9

1

<u>**CERTIFICATE OF SERVICE**</u>

2

     I hereby certify under penalty of perjury under the laws of the State of Washington and the

3

United States of America that on the date below, I transmitted the foregoing Notice of Removal to

4

the following parties of record via electronic mail and first-class U.S. mail:

5

6

Douglas H. Sanders

**MILBERG COLEMAN BRYSON**

7

**PHILLIPS GROSSMAN, PLLC**

1311 Ponce de Leon Ave.

8

San Juan, PR 00907

dsanders@milberg.com

9

10

William B. Federman

**FEDERMAN & SHERWOOD**

11

10205 North Pennsylvania Avenue

Oklahoma City, OK 73120

12

-and-

212 W. Spring Valley Road

13

Richardson, TX 75081

14

*Attorneys for Plaintiff*

15

16

DATED this 30th day of October, 2023, at Seattle, Washington.

17

18

*/s/ Jessica M. Andrade*

19

Jessica M. Andrade, WSBA #39297

POLSINELLI PC

jessica.andrade@polsinelli.com

20

21

22

23

24

25

26

DEFENDANT UMPQUA BANK'S
NOTICE OF REMOVAL- 10